IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KIMBERLY A. MORELAND, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17-00425-CV-W-ODS ) |
| KIRSTJEN NIELSEN, Secretary, Department of Homeland Security,[1] | ) ) ) ) |
| Defendant. | ) |

<u>ORDER AND OPINION GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pending is Defendant's motion for summary judgment. Doc. #19. For the following reasons, Defendant's motion is granted.

## I.  BACKGROUND[2]

The Federal Emergency Management Agency ("FEMA") is an agency within the Department of Homeland Security ("DHS"). Pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), FEMA is responsible for administering and coordinating the federal government's response to presidentially-declared disasters. 42 U.S.C. §§ 5121-5207. The Stafford Act authorizes FEMA to hire temporary personnel when necessary. *Id.* § 5149. Stafford Act Employees ("SAE") do not enter FEMA pursuant to a merit-based hiring process, do not acquire competitive status through employment, and have limited rights. SAEs include, but are not limited to, Disaster Assistance Employees ("DAE"). Typically, a DAE is hired for a term appointment up to two years, and during the term, works on an intermittent basis for FEMA in times of emergency or disaster.

---

[1] Kirstjen Nielson was substituted as Defendant. Fed. R. Civ. P. 25(d).
[2] Unless otherwise noted, the facts in this section are uncontroverted by the parties. The Court notes Plaintiff responded to four of Defendant's thirty-four facts. Doc. #22-15. Defendant's facts that are supported by admissible evidence and not controverted by Plaintiff are deemed admitted. Fed. R. Civ. P. 56(e)(2); L.R. 56.1(b).

### A. Plaintiff's Employment with FEMA

In September 2008, FEMA hired Plaintiff Kimberly Moreland, an African-American female over the age of forty, as a DAE.[3] Doc. #19-2. Plaintiff's appointment was not to exceed March 27, 2010. *Id.* Plaintiff understood her appointment was temporary, could be terminated at any time with or without cause, and would end on March 27, 2010, unless her appointment was extended "based on the needs of the Agency." Doc. #19-3. If she failed to meet and maintain the conditions of her employment, Plaintiff knew her appointment could be terminated. Doc. #19-3, at 2; Doc. #22-12, at 2. In March 2010, FEMA extended Plaintiff's appointment, not to exceed March 24, 2012. Doc. #19-4.

From September 2008 to March 2012, Plaintiff was a member of FEMA Region VII, Recovery Division, Individual Assistance Branch ("Region VII"). FEMA rated Plaintiff qualified for the positions of applicant services program specialist, direct housing specialist, and voluntary agency liaison specialist. Doc. #22-2. Her immediate supervisor was Michelle Rivas, Disaster Case Management Lead. Doc. #19-6, at 2. Catherine Newman was Region VII Chief, and Cadre Manager for Region VII Individual Assistance Cadre. Doc. #190-7, at 2. Newman reported to Thomas Costello, Recovery Division Director. *Id.*

### B. The Decision Not to Reappoint Plaintiff

On March 22, 2012, FEMA notified Plaintiff via letter that her appointment would not be extended. Doc. #19-9. The letter reminded Plaintiff that her appointment was temporary, as set forth in the Conditions of Employment she signed. Doc. #19-9. Plaintiff was informed that, pursuant to "the Stafford Act and the Conditions of Employment," she has not been reappointed," her appointment would conclude on March 24, 2012, and she was "free to apply for an appointment with another Cadre." *Id.*

Newman and Costello made the decision not to reappoint Plaintiff.[4] Doc. #19-5, at 1; Doc. #19-7, at 3; Doc. #19-10; Doc. #22-7. Newman composed and signed the letter to

---

[3] From 2005 to 2008, FEMA employed Plaintiff, but her work history is unknown. Nonetheless, her prior work with FEMA is inconsequential to the pending motion.
[4] Plaintiff attempts to dispute who made the decision not to reappoint her. But she cites nothing in the record showing someone else made the decision. Doc. #22-15, at 1. Instead, Plaintiff argues the Court may not make credibility determinations or weigh evidence when considering a motion for summary judgment, and state of mind is a factual

Plaintiff informing her of the decision. Doc. #19-9. When writing the letter, Newman was guided by instructions provided to Cadre Managers about their decisions to reappoint (or not reappoint) SAEs. Doc. #19-11. If a Cadre Manager believed an SAE had a "conduct or performance deficiency which is not likely to be remediated," the Cadre Manager was "obligated to allow the current appointment to expire." *Id.* When she sent the letter, Newman knew Plaintiff's sex and race, and knew she engaged in equal employment opportunity ("EEO") activity in 2009.[5] Doc. #22-5, at 2. Newman did not know Plaintiff's age.[6] *Id.*

On April 14, 2012, Plaintiff emailed Newman, asking why she was not reappointed. Doc. #22-4, at 2. Newman responded, thanking Plaintiff for her service, reminding her she was a temporary employee, and stating, among other things, FEMA's "current and projected staffing needs meant [FEMA] needed to create a more nimble organization, which required making some very hard choices." *Id.* at 1-2. Although not included in the email, Newman maintains she did not reappoint Plaintiff because she "exhibited conduct…not conducive to the workplace," was "rude and demanding," and "included subtle threats via email." Doc. #1-7, at 2-3; Doc. #19-5, at 1. Newman refers to an email Plaintiff sent to Jono Azalone[7] on November 10, 2011:

> Hello Jono how are you? I am just emailing you so you can give me some answers. I think you owe me that much. Why am I getting called out as Applicant Service Specialist ? I was hired in Reg VII as a Val and for some reason this region is trying to throw me in as applicant specialist position . I did not do nothing wrong for you all to keep putting me in this position. But I know one thing I am going to make a complaint about this. My name is nowhere on the VAL list. I have won my case and I am not finish with it yet. I am giving you a heads up cause this is bull. I am going to keep my head up because I am going to get that last laugh you can bet on that. I already know what you are going to say. You have nothing to do with how

---

issue preventing entry of summary judgment. *Id.* Plaintiff's argument misses the mark: a fact supported by admissible evidence is deemed uncontroverted if the nonmoving party does not controvert the fact. Fed. R. Civ. P. 56(e)(2); L.R. 56.1(b). The record establishes Newman and Costello decided not to reappoint Plaintiff. Doc. #19-5, at 1; Doc. #19-7, at 3; Doc. #19-10; Doc. #22-7. Plaintiff did not controvert this fact.

[5] Newman knew about Plaintiff's EEO activity in June 2009. Doc. #19, at 8; Doc. #22-15. The record does not demonstrate Newman knew about Plaintiff's 2011 EEO activity.

[6] Although Newman recalled meeting Plaintiff, Plaintiff testified she never met Newman. Doc. #19-7, at 2; Doc. #19-8, at 4.

[7] According to Azalone, Plaintiff "had a dotted line report to [him] for subject matter during operations when she was deployed in Region VII." Doc. #22-10, at 2.

3

> ADD call me out. But it is mighty strange how I have not been called out as VAL!!!!! I needed to get that off my chest…. You have a good day
> Kim

Doc. #19-17, at 2. An hour later, Azalone responded, reminding Plaintiff they previously discussed her concerns. *Id.* According to Azalone, Plaintiff was unavailable when there were openings. *Id.* No other similar emails were provided to the Court.

### C. The Other Region VII SAEs

On March 24, 2012, twelve other Region VII SAEs were not reappointed. The SAEs who were not reappointed included two African-Americans, ten females, ten over the age of forty, and four who engaged in EEO activity. Doc. #19, at 9; Doc. #22-15. On that same day, 102 SAEs were reappointed. The reappointed SAEs included at least nine African-Americans, seventy-three females, eighty-five over the age of forty, and ten who engaged in EEO activity.[8] *Id.* That is, 81.8% of the African-American SAEs, 87.9% of the female SAEs, 89.5% of the SAEs over the age of forty, and 71.4% of the SAEs who engaged in EEO activity were reappointed. *Id.*; Doc. #1-3, at 12.

### D. Plaintiff's EEO Activity After She Was Not Reappointed

In April 2012, Plaintiff sought EEO counseling, alleging FEMA's decision not to reappoint her was retaliatory and discriminatory. Doc. #1-2. After counseling was unsuccessful, Plaintiff filed a complaint with DHS, alleging the decision not to reappoint her was in retaliation for engaging in EEO activity, and discriminatory on the basis of her race, sex, and age. *Id.* It appears DHS issued its Report of Investigation in December 2012.[9]

Plaintiff then requested a hearing before an Equal Employment Opportunity Commission ("EEOC") Administrative Judge. In July 2014, the EEOC issued its decision, finding Plaintiff failed to establish a prima facie case of age, sex, or race discrimination, or retaliation. Doc. #1-3.[10] In August 2014, DHS implemented the EEOC's decision as its Final Order. Doc. #1-4, at 1-4. Plaintiff appealed DHS's Final Order to the EEOC Office of Federal Operations. *Id.* at 5; Doc. #1-5. In October 2016, the Office of Federal Operations

---

[8] The races of sixteen individuals are unknown.
[9] This report was not provided to the Court; however, the parties agree the report was issued in December 2012. *See* Doc. #1, ¶ 29; Doc. #1-3, at 4; Doc. #5, ¶ 1.
[10] Pursuant to 29 C.F.R. § 1614.109(6), the EEOC chose not to hold a hearing. Doc. #1-3.

4

affirmed DHS's Final Order. Doc. #1-7, at 1-6. Plaintiff unsuccessfully sought reconsideration of the decision. Doc. #1-7, at 7; Doc. #1-8; Doc. #1-9.

E. The Pending Lawsuit

On June 25, 2017, Plaintiff filed the above-captioned matter, alleging FEMA's decision not to reappoint her was retaliatory and discriminatory. Doc. #1. Although Plaintiff refers to Title VII and the Rehabilitation Act[11] as the bases for her claims (Doc. #1, at 1), the Court assumes – as Defendant has – Plaintiff alleges claims of retaliation and discrimination based upon race and sex under Title VII. Plaintiff also alleges a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"). Now pending is Defendant's motion for summary judgment, which fully briefed. Doc. #19.

II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted). Inadmissible

---

[11] If Plaintiff is asserting Rehabilitation Act claims, the Court dismisses those claims because Plaintiff failed to establish she exhausted her administrative remedies with regard to said claims. 29 U.S.C. § 794a(a)(1); *Morgan v. U.S. Postal Serv.*, 798 F.2d 1162, 1165 (8th Cir. 1986).

evidence may not be used to support or defeat a motion for summary judgment. *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (citation omitted).

## III. DISCUSSION

### A. Plaintiff's Race and Sex Discrimination Claims

*(1) Prima Facie Case*

Defendant moves for summary judgment on Plaintiff's race and sex discrimination claims. Absent direct evidence of discrimination, a plaintiff establishes a prima facie case of discrimination by showing (1) she is a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1068 (8th Cir. 2017) (citation omitted). In its motion, Defendant does not discuss the first three elements, conceding Plaintiff satisfies those requirements. Defendant argues it is entitled to summary judgment because Plaintiff has not presented evidence showing the decision not to reappoint her was related to her race or sex.

A plaintiff can satisfy the fourth element of a prima facie case of discrimination "in a variety of ways." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (internal quotations and citations omitted). For example, a plaintiff can show an inference of discrimination by demonstrating similarly situated employees outside her protected class were treated more favorably, the decision maker made biased comments, the employer did not follow its policies, or the employer shifted its explanation for its decision related to the plaintiff's employment. *Id.* (citations omitted); *see also Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014) (citation omitted).

Plaintiff argues summary judgment is not appropriate because Defendant's statement of facts are "derived from self-serving, credibility-dependent statements from…Newman, whose averments are in direct contraction to her written admission." Doc. #22, at 7. The Court is well aware it cannot make credibility determinations when considering a motion for summary judgment. *Anderson*, 477 U.S. at 255. With regard to the pending motion, the Court did not make credibility determinations. Further, the Court, as it is required to do, viewed the evidence in the light most favorable to Plaintiff, giving her

6

the benefit of all inferences reasonably drawn from the evidence. *Id.*; *Matsushita Elec. Indus.*, 475 U.S. at 587-88.

With regard to Newman's statements allegedly contradicting her written admission, Plaintiff does identify the relevant statements and admission, and does not cite anything in record to support her argument. This Court "is not required to speculate on which portion of the record" Plaintiff relies, "nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (citation omitted). Nevertheless, the Court examined Plaintiff's statement of facts (Doc. #22-1), and located one reference to a contradictory statement: "Newman's assertion that [Plaintiff's] non-reappointment was based on an evaluation of current work force needs was in contradiction to FEMA's significant understaffing." Doc. #22-1, at 2. This purported fact does not support Plaintiff's contention that Newman's (unidentified) statements contradict her (unidentified) written admission.[12] Accordingly, this argument fails.

Plaintiff also contends Defendant's summary judgment motion should be denied because Defendant ignored material facts. According to Plaintiff, those material facts are (1) the "letter of termination" contained false information; (2) Newman did not inform Plaintiff of performance or conduct deficiencies; (3) Plaintiff's record did not reflect performance or conduct deficiencies; (4) a "work leader" told Newman not reappointing Plaintiff was "ill advised"; (5) the "absence of evidence that Newman made any effort to explain…why" Plaintiff was not reappointed; (6) Region VII was "significantly understaffed"; (7) Plaintiff had better qualifications than the "majority of her counterparts" and was one of the more active DAEs; and (8) Plaintiff's private communications were not threats. Doc. #22, at 7.

First, to support her allegation that the termination letter contained false information (alleged material fact 1), Plaintiff cites one document entitled "Regional Statistics." Doc. #22-6. The document, dated March 20, 2012, appears to refer to the "total force structure" for Region VII. *Id.* The document contains a warning that the data is protected by the Privacy Act of 1974, and release or disclosure of information may be penalized. *Id.*

---

[12] Additionally, Plaintiff's purported fact is supported solely by an exhibit that, as explained *infra*, is likely inadmissible. Even if it was admissible, the exhibit does not contradict Newman's statements in her March 22, 2012 letter to Plaintiff.

7

Regardless, the document does not identify its source of information. Moreover, Plaintiff provides no information as to what the document is, does not identify its author, does not indicate if Defendant prepared and/or produced it, does not provide information indicating the data is accurate, and does not establish the document is self-authenticating. She has not authenticated the document. Fed. R. Evid. 901(a). Because the Court cannot discern if the "Regional Statistics" document constitutes admissible evidence, it cannot consider it.

Even if the Court were to consider the "Regional Statistics" document, it does not support Plaintiff's contention that the termination letter contains false information. Plaintiff claims the document reveals the Individual Assistance Cadre was undermanned by 165 DAEs. While the document may show what Plaintiff says it does, the document does not establish the termination letter contains false information. In fact, nothing in the termination letter refers to staffing needs. Doc. #19-9. Critically, the "Regional Statistics" document, when evaluated with the termination letter, does not give rise to an inference of discrimination, which Plaintiff must demonstrate to survive summary judgment on her discrimination claims.[13] The same analysis and reasoning apply to Plaintiff's purported fact that Region VII was understaffed (alleged material fact 6), which is also supported by the "Regional Statistics" document. Furthermore, understaffing alone does not give rise to an inference of discrimination when Plaintiff and twelve others, including several outside her protected classes, were treated the same way, and were not reappointed.

Next, Plaintiff asserts summary judgment is not appropriate because Newman failed to inform Plaintiff of performance or conduct deficiencies (alleged material fact 2), and her employment record did not contain performance or conduct deficiencies (alleged material fact 3). With regard to Newman's alleged failure to point out deficiencies, Plaintiff fails to cite anything in the record to support this purported fact. *See* Doc. #22-1, at 1.[14] In any event, an employee not being counseled about performance or conduct deficiencies and/or

---

[13] Because she does not specifically identify the "letter of termination," the Court presumes Plaintiff is referring to the March 22, 2012 letter, which informed Plaintiff that she was not being reappointed. To the extent Plaintiff intended the "letter of termination" to refer to Newman's April 16, 2012 email, which referred to FEMA's current and projected work forced needs, the Court would reach the same outcome because the "Regional Statistics" document does not contradict the statements set forth in Newman's email.

[14] While Newman, who was not Plaintiff's immediate supervisor or second-line supervisor, may not have counseled Plaintiff, Anzalone, to whom Plaintiff reported when she was deployed, talked with Plaintiff about her inappropriate behavior. Doc. #22-10, at 9-10.

8

an employment record not containing deficiencies do not present circumstances from which the Court could infer discrimination occurred.

Plaintiff claims an issue of material fact exists because a "work leader," Constance Beeler, purportedly told Newman not reappointing Plaintiff was "ill advised" (alleged material fact 4). Plaintiff cites to a statement by Beeler to support this purported fact. But the record does not say what is represented to the Court. The record shows Beeler "was not happy about [Plaintiff's] non-appointment and that [she] disagreed." Doc. #22-9, at 10. Even if Plaintiff meant to set forth what Beeler actually said about Newman's decision in an effort to defeat summary judgment, Beeler's opinion about the decision does not present circumstances inferring discrimination occurred.

Plaintiff argues the "total absence of evidence that Newman made any effort to explain…why" Plaintiff was not reappointed demonstrates a genuine issue of material fact (alleged material fact 5). As best the Court can discern, Plaintiff's argument refers to the following purported fact: "There is no evidence…Newman provided any justification to Ms. Beeler for the non-reappointment decision." Doc. #22-1, at 3. To support this fact, Plaintiff cites to a statement Newman executed during DHS's investigation into Plaintiff's complaint. *Id.*; Doc. #22-5. But that statement does not include anything about Newman not providing justification to Beeler for the non-reappointment of Plaintiff. *Id.* For this reason, Plaintiff's purported fact is unsupported and cannot be considered. Fed. R. Civ. P. 56(c)(1); L.R. 56.1(b).[15]

In addition, Plaintiff argues a genuine issue of material fact exists because she "was one of the more active DAEs" (first portion of alleged material fact 7). Nothing in Plaintiff's statement of facts specifically supports this argument. The closest purported fact indicated Plaintiff "had been regularly deployed." Doc. #22-1, at 4. But Plaintiff's support for this fact is a forty-four page exhibit, and she does not direct the Court to any particular pages. *Id.*; Doc. #22-11. As noted above, the Court "is not required to speculate on which portion of

---

[15] Plaintiff provides no authority for her argument that Newman was obligated to provide reasons for her decision, or Newman was obligated to provide information other than what was included in her March 22, 2012 letter and April 14, 2012 email. Relevant here, the Eighth Circuit recently stated, "Title VII does not impose a legal obligation to provide an employee an articulated basis for dismissal at the time of firing, and an employer is certainly not bound as a matter of law to whatever reasons might have been provided." *Rooney*, 878 F.3d at 1116. Further, an "employer may elaborate on its explanation for an employment decision" during litigation. *Id.*

9

the record" Plaintiff relies. *White*, 904 F.2d at 458. Even if the Court reviewed the entire exhibit, Plaintiff did not establish what regular deployment is, and how her work history establishes she was regularly deployed. The Court cannot consider this unsupported fact.

Plaintiff also asserts she "had qualifications in more functional areas than the majority of her counterparts" (second portion of alleged fact 7). Again, the facts set forth by Plaintiff do not include this assertion. The closest alleged fact that could support this argument is Plaintiff "had a higher level of experience and had more skills than many DAEs who were reappointed." Doc. #22-1, at 4. In support of this purported fact, Plaintiff cites to one exhibit, which is 524 pages. Doc. #22-14. Again, Plaintiff fails to direct the Court to any particular page(s). The Court is not required to and will not speculate on what portions of the 524-page exhibit support Plaintiff's purported fact. *White*, 904 F.2d at 458. In addition to not identifying the pages of the record on which she relies, Plaintiff fails to (a) establish what her experience and skills are; (b) how her experience and skills compare to other DAEs, particularly those who were reappointed; and (c) identify similarly situated DAEs outside Plaintiff's protect class(es) with lower levels of experience and/or lesser skills who were reappointed. Not only is her argument unsupported by the record, Plaintiff fails to establish a genuine issue of material fact with regard to her qualifications.

Finally, Plaintiff contends a genuine issue of material fact exists because her "private communications" with coworkers were not threats but were exercises of her right of freedom of expression, which "based on [her] EEOC activities, h[a]d been validated by EEOC factfinders" (alleged material fact 8). This argument, however, is without support in the record due to Plaintiff's failure to cite anything in the record in support. For this reason alone, the Court cannot consider this argument. Even if the Court could consider this argument, Plaintiff's opinion that her email was not a threat does not present circumstances giving rise to an inference of discrimination.

Taken individually and collectively, Plaintiff's purported material facts – specifically, those facts supported by admissible evidence – do not establish the fourth requirement of a prima facie case of discrimination. While she provides speculation and conjecture, Plaintiff fails to provide specific facts, supported by evidence, showing there is a genuine issue of material fact with regard to her race and sex discrimination claims. *Matsushita Elec. Indus.*, 475 U.S. at 586 (citations and internal quotations omitted). Additionally, although 102 SAEs were reappointed, Plaintiff does not identify a single SAE who is

similarly situation to her and outside her protected class(es) who was treated more favorably than she was. Further, of the SAEs who were reappointed, more than 80% of the African-American SAEs were reappointed, and nearly 88% of the female SAEs were reappointed. Moreover, Newman, who decided not to reappoint Plaintiff,[16] is the same race and sex as Plaintiff, which weakens a possible inference of discrimination. *See, e.g.*, *Clay v. United Parcel Serv., Inc.*, No. 13-2240, 2014 WL 5298173, at *6 (D. Kan. 2014); *Ferguson v. Waffle House, Inc.*, 18 F. Supp. 3d 705, 723 (D. S.C. 2014); *Askari v. L.A. Fitness Int'l, LLC*, No. 09-2789, 2010 WL 3938320, at *5 (D. Minn. 2010); *Haywood v. Lucent Techs., Inc.*, 169 F. Supp. 2d 890, 912 n.7 (N.D. Ill. 2001).

The Court finds Plaintiff fails to establish a prima facie case of discrimination, and there is no evidence of a nexus between FEMA's decision not to reappoint Plaintiff and her race or sex. Therefore, Defendant's motion for summary judgment on Plaintiff's claims of race and sex discrimination is granted.

### (2) Defendant's Legitimate, Nondiscriminatory Reason

Even if the Court found Plaintiff established a prima facie case of race or sex discrimination, Defendant would still be entitled to summary judgment. If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Bunch*, 863 F.3d at 1068; *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115 (8th Cir. 2018). Newman did not reappoint Plaintiff because she "exhibited conduct…not conducive to the workplace," was "rude and demanding," and "included subtle threats via email." Doc. #1-7, at 2-3; Doc. #19-5, at 1. Plaintiff knew she was required to "conduct [herself] at all times in a professional manner." Doc. #19-3. In response to Defendant's summary judgment motion, Plaintiff does not dispute (or even discuss) Defendant's legitimate, nondiscriminatory reason, ostensibly conceding Defendant met its burden.

### (3) Pretext

Because Defendant articulated a legitimate, nondiscriminatory reason for not reappointing Plaintiff, the burden shifts back to Plaintiff to "prove by a preponderance of

---

[16] Costello was also involved in the decision but his race is unknown to the Court.

11

the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Rooney*, 878 F.3d at 115-16 (internal quotation and citations omitted). Pretext may be demonstrated in two ways: Plaintiff can persuade the Court the discriminatory animus "more likely motivated" Defendant, or show Defendant's explanation is "unworthy of credence because it has no basis in fact." *Rooney*, 878 F.3d at 1117 (citations omitted). "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the [adverse employment action]." *Id.* (citation omitted). Plaintiff, however, does not identify any evidence of pretext. In fact, pretext is not even mentioned in her summary judgment brief. Doc. #22. Thus, even if Plaintiff could establish a prima facie case of discrimination, the Court would still grant summary judgment in Defendant's favor because there is no evidence of pretext.

## B. Plaintiff's Age Discrimination Claim

Defendant moves for summary judgment on Plaintiff's age discrimination claim because she has not established a prima facie case. To establish a prima facie case of age discrimination under the ADEA, Plaintiff must show (1) she was at least 40 years old; (2) she met the applicable job qualifications, (3) she suffered an adverse employment action; and (4) there is some evidence that age was a factor in the employer's decision. *Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011). "At all times, the plaintiff retains the burden of persuasion to prove that age was the 'but-for' cause" of the employment decision. *Id.* (citing *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009). In its motion, Defendant did not discuss the first three elements, conceding Plaintiff satisfies those requirements of a prima facie case of age discrimination.

As best the Court can discern, Plaintiff's opposition to Defendant's motion for summary judgment on her age discrimination claim is supported by the same purported material facts she championed for her race and sex discrimination claims. The Court discussed these purported material facts at length. *See, supra*, section II(A)(1). These purported material facts do not establish her age was the but-for cause of FEMA's decision not to reappoint her.[17]

---

[17] The Court notes Plaintiff was asked, during DHS's investigation, why she believed age was a factor in the decision not to reappoint her. Doc. #19-6, at 5. In her September 19, 2012 affidavit, Plaintiff stated the bases of her race, sex, and age discrimination claims

Instead, the record establishes Newman did not know Plaintiff's age when she made the decision not to reappoint Plaintiff. Additionally, Newman, who is older than Plaintiff, is also in the same protected class. This fact weakens any inference that Newman's decision not to reappoint Plaintiff was based upon Plaintiff's age. *See, e.g.*, *Rooks v. Girl Scouts of Chicago*, 95 F.3d 1154 (7th Cir. 1996) (noting "there can be no compelling inference of age discrimination" when the decision maker is also a member of the same protected age group); *Allen v. PetSmart, Inc.*, 512 F. Supp. 2d 288, 295 (E.D. Pa. 2007); *Mathews v. Huntington*, 499 F. Supp. 2d 258, 267 (E.D.N.Y. 2007)

Because Plaintiff fails to establish her age was the but-for cause of FEMA's decision not to reappoint her, the Court grants Defendant's motion for summary judgment on Plaintiff's age discrimination claim.[18]

### C. Plaintiff's Retaliation Claim

Defendant also moves for summary judgment on Plaintiff's retaliation claim. To establish a prima facie retaliation claim, Plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) the protected conduct was the but-for cause of the adverse action. *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 551 (8th Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)). Defendant concedes Plaintiff satisfies the first two elements, but argues Plaintiff has not presented evidence of a causal link between her protected activity and the decision not to reappoint her.

Again, Plaintiff seems to rely upon the same purported material facts she utilized in opposition to the motion for summary judgment on her discrimination claims. But, as set forth above, the facts supported by admissible evidence do not demonstrate a genuine issue of material fact. While Newman knew about Plaintiff's prior EEO activity in June

---

were the same. *Id.* That is, "Caucasian site supervisors/staff, male or female, reflect the slave owner's mentality as visualized during the days of slavery by their treatment of African-American females…. They have little or no regard nor respect for our work ethics and standards…." *Id.* at 4. Nothing in Plaintiff's explanation relates to her age or alleges age discrimination. *Id.*

[18] Even if Plaintiff could establish a prima facie case of age discrimination, Defendant would still be entitled to summary judgment because Defendant articulated a legitimate, nondiscriminatory reason for not reappointing Plaintiff. *See* section III(A)(2). Moreover, Plaintiff has not pointed to any evidence showing FEMA's decision was pretextual.

2009, it is unknown if she knew about Plaintiff's 2011 EEO activity. Regardless, it is uncontroverted that Newman was not involved in any of Plaintiff's prior EEO activities, which deflates Plaintiff's argument that Newman was being retaliatory. Also, the passage of time, which is often used to establish retaliation claims, further calls into question that Newman was being retaliatory. Nearly three years passed between when Newman knew about Plaintiff's EEO activity and when Newman made the decision not to reappoint Plaintiff. Finally, during DHS's investigation of her complaint, Plaintiff was asked why she believed her EEO activity was a factor in FEMA's decision not to reappoint her. She provided the following answer:

> Because African American females are not allowed to defend themselves in any manner. They are to accept what is offered, do what they are told and be grateful for being hired. African American females are the [sic] "the first fired" regardless of their ability to perform the duties as well as or greater than the Caucasian population at FEMA.

Doc. #19-6, at 5. Given the lack of evidence of her EEO activity being the "but for" cause of FEMA's decision not to reappoint her, Plaintiff has failed to establish a prima facie case of retaliation. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's retaliation claim.[19]

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 15, 2018　　　　　　　　UNITED STATES DISTRICT COURT

---

[19] Even if Plaintiff could establish a prima facie case of retaliation, Defendant would still be entitled to summary judgment because it articulated a legitimate, nondiscriminatory reason for not reappointing Plaintiff. See section III(A)(2). Moreover, Plaintiff has not pointed to any evidence showing FEMA's decision was pretextual.